Alexander at Al versus Connie Nord speak. This is case number 4141096. That was 96 for the appellate. We have Craig Randall.    And for the appellate, David Liefers. Is that pressed correctly? Mr. Randall, I see you're ready to go. Please do so. May it please the court. We're here on a relatively narrow and I think undisputed legal question with regard to the enforcement of, and I think I pronounced that correctly, interoral law. That's correct. I looked it up. Intererum, is that how it's pronounced? Terorum. Terorum. Yes. Well, I'm going to confess here I'd never seen that phrase before until this case was circulated amongst the judges. So, although I'm familiar with what type of clause it is. Okay, now that we've all made those disclosures, you may proceed going forward. And the reason the clauses we are familiar with have that name is it comes from the fact that it is a threat. It is a threat, in the case of an estate, whereby the testator who provides for distributions of their estate to beneficiaries. It includes a provision that says, okay, this is what you're getting, but don't challenge my will. If you do, you forfeit those provisions. Now, obviously forfeitures in any area are not favorites of the law, but forfeiture provisions in both this context and other contexts are enforceable. Where they are clear and there is no dispute as to the intent. Now, forfeiture is a harsh consequence, but in this context, not really, because in this context, this forfeiture is by definition a self-inflicted wound. Well, let me ask this. Isn't the question whether the proceedings brought by Connie Nordzig challenged the validity of the will? Isn't that? Well, that is an issue that is raised by the appellees. Well, but the point is, under the clause, it has to be proceeding to challenge contestability of this will and any part thereof for the provision, the interim provision to apply. Isn't that correct? That is correct. Couldn't the trial court, couldn't this court view what Connie filed as not challenging the validity, but pointing out there are some new issues here that the court might want to consider as whether this would be a good thing to do? Specifically, all that had been going on with the guardianship proceedings. Well, Your Honor, that's the problem. No, I do not believe as a matter of law it can, and I say that for this reason. The law in dealing with, and it goes back literally 100 years, requires that the executors… Executors is chosen by the… Exactly. How about this as a thought? We have four executors for whatever reason. Connie and her siblings weren't getting along well. Would that be correct? Okay. Let's assume instead of just not getting along well, Robert and Connie had a serious argument in which he shot her, but she wasn't killed. Okay. He's sitting in jail charged with aggravated battery with a weapon, maybe even attempted murder. And there's reason to believe they wouldn't get along well as co-executors. She's still alive. She's recovered. Would it be improper for Connie, under those circumstances, to have suggested to the court maybe we ought to not be co-executors? Well… As a matter of law. No, I would disagree, Your Honor, simply because… Disagree with what? That that could be done in the context… This isn't a suggestion by Ms. Nordstein. She went in, asked that letters of administration be issued to her as the sole executor, even though my other three siblings are designated. And interestingly, the language of the will identifies the four of them collectively as the executor singular. So… And this goes back to… There's a Supreme Court opinion that… It goes back to the 100-year requirement wherein a gentleman named his longtime mistress as his executor. And they came in, and the co-executors came in and said, well, wait a minute. There is no way that we're going to deal with his girlfriend. There's no way that we can work together. And the holding of that was… That was known at the time. There was always a potential for conflict. Perhaps not as extreme as… What about my shooting case? You didn't answer my question whether it would be inappropriate for Connie to raise this matter. Let's assume everything else that happened in this case happened, except she says, by the way, he shot me, and he's sitting in jail, charged with attempted murder, and I've recovered. Well, there again, that isn't a basis for her to come in and ask the court to ignore. So the answer would be she would have invoked the interorum clause, even under those circumstances. If she went in, yes, Your Honor, and said, I want to be the sole executor because my co-executor took a shot at me two years ago, that in and of itself is not a basis. Now, if that resulted in their inability, because they would be charged as fiduciaries with the good faith effort to put that behind them, could they practically… Probably unlikely. But only at the point where they can't resolve their differences and perform their duties can they come in and say, look, we're not getting anywhere. It's like a deadlocked board of directors. We need somebody to step in and take care of this, a special administrator on certain issues, or what have they. The threshold issue of who the executor is going to be for a will is non-discretionary. But counsel, don't we have to start at looking at the language of the clause itself? Doesn't that guide us in terms of what does or does not violate the clause? Can't that make a difference? Well, it can, but it has to be a legitimate difference. And that's exactly what the appellees pointed out. Well, even though we're asking for relief that the trial court has no jurisdiction to grant if the executor provision is valid, so we can't have this relief unless the trial court determines as a matter of law that he's not bound by that provision, that it is not valid. But we're not really challenging its validity. Basically, we're saying it's not a challenge to validity if we go in and ask the court to ignore it. Is there a presumption against the application of inter orum clauses? Well, it's the standard that applies to forfeitures in general. The evidence has to be clear. The intent of the parties has to be clear. And I don't think that you could, by massaging the words you use, you could put lipstick on a pig. Basically, what this petition asks is please trial judge, because I personally can't get along with my siblings, appoint me. But isn't that different than asking or saying it's not valid that we have four executors? Isn't that different? And that's what the clause prohibits, challenging the validity? Well, if the court is to determine that the actual word validity has to appear, allowing anybody to file anything as long as they don't use the magic word. In other words, I'm not saying the provision is invalid, court. I'm just asking you to ignore it and not enforce it. And that's the problem, I think, with the appellee's argument. Saying ignore it and do what I want you to anyway is somehow distinguished from saying, well, the provision is invalid, I think is really no distinction at all. It's allowing something that is prohibited under the will to be done without the consequence imposed by the will, by the semantics of avoiding the B word, and simply ask for relief that the court can't grant if the clause in question is valid. I mean, it is implicit that the court find that clause invalid to grant the relief that Mrs. Nordsick was asking for. So in interpreting that, there would probably be little that could be done, because what that does is open up the door for imaginative semantic structuring of pleadings so that they don't really use the B word, but they can still challenge a provision here or challenge a provision there, and basically to just take a flyer on it without the consequence placed in the will by the testator to deter that very thing. If the petition was withdrawn, how can you say there was a challenge to the provision in the will? The language of the interim provision is clear that it is triggered by the commencement of the proceeding. Now, this proceeding was commenced and continued for approximately three months, despite objections to a briefing right up until it was withdrawn on the day it was set for hearing. But the language is clear. It's commencement. And again, that's logical because that would prevent a party from filing whatever they chose to file, challenging the will or provision of the will. In the case of a will contest, for example, file it, do discovery, get the lay of the land, figure out who could testify to it, and then, whoops, I don't think I can prove this. Well, under your theory, the petition could have been filed one day and then withdrawn the next day, but it was still commenced and that would trigger the clause, right? That's right. So once you commence something, you can't stop what has begun by your filing and that's what the testator had in mind? And the problem is you can't do that without judicially modifying the language chosen by the testator. The testator selected commencement. Well, it seems like to me to commence a challenge, you've actually got to start a hearing on the challenge you're making in the petition. That's really the commencement. You're saying the commencement is just when you take it to the courthouse and file it. Well, to take the more extreme example, if you file a will contest, but before it was set for hearing, you withdrew it. It was still commenced. See, the thing is, and the purpose of these clauses, and we go back to the purpose of these clauses, is so a lot of time isn't wasted on baseless claims, which this absolutely was. That really isn't a question. There was no basis not to appoint the executors designated in it. And if you think about it, the door that is open from that kind of argument is that any time you have multiple executors, you'll have this threshold squabble where they come in and say, well, you know, my brother Don didn't see Mom for 10 years, or he doesn't respect the family farm that Mom wanted to pass on, so I can't agree with him. You open the door for litigation that this clause is absolutely intended to prevent. The commencement language is absolute. When this was filed, it was commencement. When she commenced a proceeding to appoint herself sole executor, that consequence was invoked, because that's what the provision stated. Now, and I think that's unfortunately what the court did, because he went in and discussed various different things, the history of these people squabbling and things like that, which is not the purpose of the provision. The purpose of the provision is to keep people from raising those kinds of issues. The law is regulative to this, and getting back to Justice Steinman's point, that we can't in fact agree. You don't know that until you are appointed and served. To merely speculate that because of our family relationship, we might not be able to agree, opens the door for this kind of proceeding, which the interim clause is intended to eliminate. Without that, this clear language chosen by the testator and many testators, which use commencement, that was in fact the holding of the, I know I'm going to pronounce this wrong, the Widjekowitz case, was where they said it is the commencement of a provision or an objection to the appointment of the designated executor, is indeed a proceeding that was a commencement of a proceeding that triggered that interim clause. Now once triggered, then it has to be enforced. Because again, the purpose of it, which is for judicial economy, to prevent speculative flyers, well let's just throw it out and see, maybe we can find a sympathetic judge who will buy our argument, to put that consequence as a deterrent to that kind of activity. So that you don't file something like that unless you are serious and you mean it. This, I suspect, was filed simply because this woman just couldn't bring herself to put her brothers and sisters on as co-executors and follow her mother's wishes. That is the very thing this clause is intended to prevent. If each one has to be looked at on a case-by-case basis, then the holding is these are unenforceable. Katie, bar the door. Anybody can file whatever they want. Don't take a flyer on it. Don't use the magic word. And worst case, there's no consequence and we go forward after much time and effort is spent by the court. This language, commencement, was to address these things at the beginning. Don't file them. And if you do, this is what's going to happen. And the holding of the trial court and the precedent of this is, well, you don't have to take that. Just don't use the validity language. And you can still de facto challenge the provision and take a flyer, see what the court does, get the lay of the land. And this would apply to will contest as well. And then dismiss it if you don't like it. And then we'll move on to administer the estate. That's not the meaning of the provision. And the interpretation urged by the appellees will defeat that purpose. They will require every one of them to meet some sort of equitable standard. Because the two conditions, violation of statute and violation of public policy, have never been argued. Not even in this appeal. Because there is no public policy to prohibit this. This was a decision, Mrs. Nordzig, elected to make with the known consequences. It's probably the example of it's better to ask for forgiveness than permission. Interim clauses are to eliminate that option. Thank you, counsel. You'll have rebuttal.  Thank you, Your Honor. May it please the Court, Mr. Randall. Well, I cannot pronounce any interior or moratorium, so I call them no contest clauses. And I think that's what we called them in the law school. Simply put, counsel's argument is that, well, if you hold in this case the filing of the petition for appointment, didn't trigger the no contest clause. That you're opening up the floodgates to litigation and arguments down the road. But the courts have repeatedly said, rather not these, that you have to look at these cases on an individual basis. Each of these cases are peculiar. And, Your Honor, when you brought up the question a moment ago to Mr. Randall, as to whether or not Connie had challenged the validity of the provision appointing or nominating four individuals as executors, the point is, in part, in our argument, is in fact she didn't. The Court has hit it on the head. Let's be practical. This is a real world here. You know from the briefs and submissions to the Court, including the record, that there was a history of at least one year worth of contentious litigation between these people. My God, they couldn't even agree that Mom should get the toilet that sat next to her bed, without having to go to court in the guardianship to get a court order to that effect. Her mother dies on November 18, 2013. The will is filed on December 5. On the 29th day, there was no communication from her two sisters and brothers. On the 29th day, Connie, recognizing that if she wanted to act together with anyone else in that capacity, that perhaps she should file a petition. Plus, as the record indicates, she had a legitimate concern that her brother, who was one of the nominated executors, was in fact, you know, selling off assets of the estate, being cattle. So on the 29th day, she took action. Now they would like you to think that that meant, even though she suggested, under the facts of the case, that she suggested that she be appointed, they would like you to think that that was some sort of a contest to the validity of the clause nominating the four in the first place. She wasn't saying that it wasn't legally binding. She wasn't saying that it was insufficient. She wasn't saying that Mother, as in the case of a will contest, was incompetent or was unduly influenced. She was coming before a probate court and simply saying, look at the history of this family. That's what she did. She didn't contest the validity. What would have happened had 30 days come and gone and nothing was filed? Well, I suppose then someone could have filed a petition. And I suppose then that the court could go ahead and appoint all four. Someone could have filed a petition for what? Pardon me? Someone could have filed a petition for what? To admit the will to probate and for appointment as executor or administrator of the will. The administrator of the will annexed. I apologize. I do litigation. I don't do a lot of probate law. Well, you emphasize, gee, it was the 29th day and something had to happen. It's not clear to me what terrible consequence would have come had nothing happened. Connie could have been faced with an objection on the part of her siblings that she acted in any capacity, even though she would have had a counter-objection to them. Isn't the law still a misdemeanor if you don't file a will within 30 days? It is. It is. I don't know that I've ever seen that prosecuted. I've never seen that prosecuted. Was the will filed? Yes. Lucille died on November 18th. The will was filed on December 5th. And then just for a timeline, Connie's petition was filed on the 18th of December. That's the petition to appoint executors under the will? Pardon me? That was a petition to appoint executors? Her petition was to admit the will to probate and for the appointment as executor. Well, so the will was filed. So what, again, I'm just wondering the significance of this 29 days that you emphasize. Why is that important? Because obviously counsel for Connie at that point in time felt that it was important to go ahead and file this petition. She had a responsibility if she wanted to act as executor to file a petition within 30 days of, I say, her death. They all knew they were dominated. I mean, even Mr. Randall's clients had received a copy of the will in May of that year. And I think just being fearful that she would not get to participate in that capacity. Plus, Your Honor, understand the practical side of all this, too. Her siblings hadn't done anything. There may not have been any great consequence if nobody would have filed within 30 days. Mr. Randall, in his argument, apparently thinks that that hit a, that argument hits a sort of a sore spot. He spends a great deal of time in his original brief arguing that Connie had sole possession of the will up to the date she filed her petition. They didn't have possession. So they couldn't have done anything. So therefore, they're justified not filing a petition until January of the following year. Apparently he thought that that was of significance. I think that Connie's petition, which was a very practical suggestion, which she withdrew voluntarily, which, as a matter of fact, wasn't even noticed, her petition wasn't even noticed for the March 4th hearing date. What was noticed was Mr. Randall's petition. And what was noticed was his motion to strike Connie's petition. What about counsel's argument that just by filing the petition, it was commenced? I mean, I understand what you're saying about it wasn't challenging the validity, but what about that? I think, in terms of the interpretation of Lucille's will, I think that is, frankly, his strongest argument, in terms of when we're trying to interpret all of the language, that, in fact, the filing of that petition was a commencement of a proceeding. So you're willing to concede that? Pardon me? Are you conceding that? I'm conceding that it's his strongest argument, if that makes any sense. I've learned long ago not to concede anything, Your Honor, unless I'm totally back into that. Okay. Counsel, let me ask you this. Yes, sir. Does the Probate Act have a provision in it which would have allowed the court to find the provision completely valid, but that there was merit in appointing only one of the four named executors to act independently? I think if the probate court conducted a hearing and determined that someone was not qualified to act, or perhaps, in the case of Robert Alexander, determined that there might have been some pre-filing malfeasance or misfeasance with regard to the sale of assets, I think the court, at that point in time, would have the authority not to appoint, in that case, Robert Alexander. Well, let me be more precise. Suppose the court doesn't find either one of the examples you just set forth, but does find that the four simply can't get along, and therefore no decisions can ever be made as far as their obligations as executors, and that it is in the best interest of the estate to appoint only one of them to act, since that one appointed would be under a fiduciary duty anyway. Would the court have such authority? Your Honor, the only case that sort of addresses that issue is the Supreme Court case of Clark v. Patterson, which Mr. Randall previously decided, and that was the case of the mistress, who had had illicit relationships with the decedent. There might have been an entirely reasonable person when it comes to executing this estate. That's true. That's true, Your Honor. I'm sorry. It struck me as funny. Apparently, it struck the testator as funny. Apparently so. Well, Justice Steigman amuses me sometimes. He's very clever. Your Honor, in the Clark case, basically they said that the fact that there is a fear that they might not get along isn't enough to deny the appointment. That's what they said. Well, in answer to Justice Turner's question, in this particular case, would you have to wait for evidence that they can't get along? Or given that the evidence, how do I put it? There's not a fear they can't get along. But a reality? It's a well-documented fact with regard to the guardianship matters that preceded they can't get along with regard to mothers' matters then and moms' estate now. Well. So how would you answer his question then? Okay. Well, let me preface it by this. Mr. Randall's fear, or he says the purpose of this clause is not to prolong things. I think allowing a probate court to address an issue like that at the outset of the case would tend not to prolong. And I don't think you should have to wait until there's malfeasance when, malfeasance or the complete inability to get along. Let's assume hypothetically that all four would have been appointed. And, of course, you don't have the record before you of really what transpired since this. But let's just assume that they really can't get along. You know, there wasn't any, in the trust in this case, there was a majority rule provision, I think, whoever the trustees are. But that wasn't the case with regard to the executives. So they have to act as a unit. And so let's assume they were appointed. And let's assume they can't even get to the point of agreeing to write a check for the funeral bill. It would seem to me that the court then, and it may be a matter of degree as to who's more at fault than others, it would seem to me that the trial court then would have the authority to, if you will, depossess one of their position as executive. So, Your Honor, I don't know if that answers your question, but I guess as a practical matter, I think a probate court should have the authority, when you have an established history like we have here, of these people, like I said a while ago, couldn't even agree to quit being given to the mother. I think as a practical matter, Connie's suggestion to the court in her petition was a practical suggestion. And I think very candidly, no way in the world would Louise Alexander have ever intended that that forfeit the dispositional or the testamentary scheme that she had in her will. I take it then, Nance, your answer to the question I asked Mr. Randall would be different. Had Robert shot Connie in waiting charges of attempted murder, that she could have taken the action she did here, suggesting to the court that, you know, we're not going to be able to work together as executors since he tried to kill me? Well, let me change that hypothetical just a little bit, and I will answer your question. Let's assume Robert's not in jail. Yes, okay. Okay, so he's not restrained. Yeah, he's posted back. He's not in jail without being around Connie. Okay. And let's assume we have a hearing. And here comes Robert, loaded for bear. Of course, this isn't quite Missouri, but loaded for bear. And here he comes with a gun, or at least the threat to Connie. Well, the answer I unequivocally don't accept Mr. Randall's answer to that question. I think that's just ludicrous. I don't think that's what the law allows. Why couldn't Connie, and why shouldn't she in this case, to avoid all of this since the clause was part of the will? Somebody filed a petition to probate, ask for all four executors to be appointed in accordance with the will, and then in a suggestion to the court, point out everything that has occurred and problems that might arise for the court's information. Well, I think she could have done that. Okay? I think on the other side of the coin, we'd still be here, because then even though they're appointed, Mr. Randall's position would probably be, well, gee whiz, she's now commenced proceeding. She's now challenging. Sure enough, that's the question I'll ask Mr. Randall in rebuttal. And we'd be right back here, Your Honor. Okay. So in your position, in your view, it would make no difference had she said, appoint us all, but there's a problem. Okay. Counsel, in reading the briefs, it appears that the attorneys at least spoke before the hearing, and then when you went back to the courtroom, one of you expressed some surprise as to how the proceeding began. As much as it appears that you had struck an agreement, is what I'm getting at, that the petition would be withdrawn and that the four siblings would be appointed. So I guess my question is, was there some kind of an agreement that the four would be appointed, the petition would be withdrawn, and if so, was there anything discussed about a later no contest clause petition being filed? Well, there was never anything. Or am I clearly outside of the record here? No. If so, don't answer it. I think it's implicit in the record. I'll answer it this way, Your Honor. Okay. I was there. And Mr. McNeely, who actually prepared the petition for Connie, brought to court with him that day a proposed order that simply, and it was the one that was signed, that simply withdrew the petition. The four were, you know, the will was admitted and the four were appointed. The discussion we had was with Mr. Randall, outside of the presence of the court, that simply that was the agreement. That's what was going to happen. The lawyer that expressed surprise when the hearing started, if you will, was me because it sounded like Mr. Randall was getting up and arguing his motion to strike our petition, which we had just agreed to withdraw. So that's, I think that may put a little context into what happened at that point. Well, was there a quid pro quo for the agreement to withdraw the petition? Again, if it's not in the record, you don't even have to answer it. Well, I suppose in this sense, Connie agreed to withdraw the petition, okay, and they agreed that all four, I guess they both agreed that all four would be appointed. So I suppose there's some sort of mutual agreement there. But the record doesn't have any agreement that they would not proceed under the interim clause. That's exactly right. Nor, very frankly, was that discussed that day. Okay. So unless your honors have any additional questions, I probably about used my time, even though I don't see anything flashing to my left. If the agreement was for all four of them to be co-executives, would that in some way be a waiver? On their part? Their position that she is no longer entitled to be anything under the will because she's removed herself completely outside of it by filing that petition wanting to be named individually. So how could they agree then that she can be named as one of the four, which reestablishes the executive clause? I'd be less than candid if I didn't tell your honor that I hadn't thought of that. Obviously, I would have argued it, I suppose. Well, it may not be a good argument. I was just asking that question. Anyway, I don't see any other questions, so thank you very much. Thank you. And now we'll have rebuttal. If you so choose, Mr. Randall. Yes, your honor. Thank you. Just to follow that up before we get into Stiglitz's question, basically all that happened was on the date of the hearing, Ms. Nordzig's counsel showed up with their document establishing their intent to withdraw that petition, which they had an absolute right to do. There was no quid pro quo and there was no agreement. The four executors were appointed because that's what the will said. They had an absolute right. The court didn't have any discretion. Those were the four people. They didn't have to worm their way in by some agreement. That was the law. They stepped aside and the petition to appoint the executors was granted, as it should have been under the will. And, in fact, that kind of segues into the question about bringing up these things in the context of the original appointment of the executors. To answer your question, it is not permitted, either under the statute or case law going back to 1905. The testator determines who he or she's executor is going to be. The court does not have discretion as to the appointment because to do so, if you recognize that, then the appointment and the duty to comply with that appointment is essentially meaningless. Well, yes, I know that's what mom said. But, judge, let me tell you this, this, this, and this, and don't follow what mom said because she was crazy or didn't know what she was doing or didn't know this about Uncle Billy or whatever it is. That is exactly what the court cannot do in determining who to appoint as executor. And that argument would then mean that all of that case law in the statute itself would be rendered meaningless. What about my question on had they done exactly the same thing, but instead of asking for Connie to be appointed, asked for all four to be appointed, and the further paragraph said for advice of the court of the problems in this case, here's the following, and the court might want to act upon it. That request, your honor, would be absolutely consistent with the will. Would be absolutely what? Consistent with the directive of the will. Even if the court said, well, this sounds awful. I'm going to change what the will said and select one of these four as the executor and leaving off changing the will's plan, that would be all four? No. Again, for the reasons I just mentioned, the court can't do that because then it takes the executor out of the hands of the testator. It can't do that? So Robert's out in bond having shot Connie and he wants to show up with Connie and work on this and she has an absolute right and the court can't do anything about it? Well, but the problem is once you cross the line and say, yeah, the court can, then of course you've determined that the court is not bound by what it says. So the answer to my question is Robert's out in bond and he has every right to continue to serve as an executor, and if Connie doesn't like it, she can resign, I guess, but that's. . . Well, it's not so much. . . The court has no choice but to give full force and effect to this designation. Exactly, because if it does not, then the court de novo decides who the executor is. Thank you, Judge. Thank you, Mr. Randall. Thank you, Mr. Liefers. The case is submitted and the court will stand in recess until further call.